# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELDON LEHMAN, individually and on behalf of all others similarly situated, | Civil Action No. 06-02484 |
| Plaintiff, | Judge Sylvia H. Rambo |
| v. | |
| CITIGROUP GLOBAL MARKETS, INC., SUCCESSOR IN INTEREST TO LEGG MASON WOOD WALKER, INC.; LEGG MASON, INC; and DOES 1 through 10, inclusive, | *Electronically Filed* |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF JOINT
## <u>MOTION FOR FINAL APPROVAL OF SETTLEMENT</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................1

II.  BACKGROUND ...................................................................................2

    A.  History of the Litigation ................................................................2

        1.  Investigation of Plaintiff's Claims .........................................2

        2.  Pleadings, Motion Practice and Discovery ...........................3

        3.  Settlement Negotiations .........................................................5

III.  TERMS OF THE PROPOSED SETTLEMENT............................................7

IV.  THE PROPOSED SETTLEMENT IS FAIR AND ADEQUATE TO THE MEMBERS OF THE SETTLEMENT CLASSES.......................................11

V.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES ............................................................................................13

    A.  The Rule 23(a) Prerequisites are Satisfied .........................................15

        1.  Rule 23(a)(1)—"Numerosity".....................................................15

        2.  Rule 23(a)(2)—"Commonality"...................................................16

        3.  Rule 23(a)(3)—"Typicality" ......................................................18

        4.  Rule 23(a)(4)—"Adequacy of Representation"...........................19

    B.  The Class May Be Properly Certified Under Rule 23(b)....................20

        1.  Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class ..............................21

        2.  A Class Action is the Superior Means to Adjudicate the Claims at Issue for Settlement Purposes .........................................................22

      a.  Most Class Members Have an Insufficient Interest to Justify Individual Lawsuits ................................................................. 22

      b.  The Extent and Nature of Other Pending Class Actions Does Not Present Any Impediment to Certification of This Settlement Class ..................................................................... 24

      c.  This Court is an Appropriate Forum for Resolution of the Claims in Dispute ..................................................................... 24

      d.  Manageability ......................................................................... 24

VI.  THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL ....................................................................... 25

    A.  Final Approval of the Settlement is Within the Sound Discretion of the Court and is Favored by Strong Judicial Policy ........................... 25

    B.  The Settlement is Fair, Reasonable and Adequate ............................. 29

      1.  The *Girsh* Factors Support the Settlement ..................................... 29

      2.  Complexity, Expense and Likely Duration of the Litigation ......... 30

      3.  Reaction of the Class to the Settlement ......................................... 31

      4.  Stage of the Proceedings and the Amount of Discovery Completed ..................................................................................... 31

      5.  Risks of Establishing Liability and Damages ................................ 32

      6.  Risks of Maintaining the Class Action Through Trial ................... 33

      7.  Ability of the Defendant to Withstand a Greater Judgment ......... 34

      8.  Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and all the Attendant Risks of Litigation ....................................................................................... 35

VII.  PLAN OF ALLOCATION ............................................................................. 37

VIII.   THE PROPOSED NOTICE PLAN ................................................................39

IX.   CONCLUSION ................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Am. Bank Note Holographics, Inc. Secs. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................37

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................14, 21, 23, 24

*Arch v. Am. Tobacco Co.*,
   175 F.R.D. 469 (E.D. Pa. 1997).......................................................19

*Austin v. Pa. Dep't of Corrs.*,
   876 F. Supp. 1437 (E.D. Pa. 1995)............................................28, 36

*Baby Neal for & by Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .......................................................16, 17, 18

*Bachrach v. Chase Inv. Servs. Corp.*,
   No.06-cv-02785, 2007 WL 3244186 (D.N.J. Nov. 1, 2007)..............................34

*Bahramipour v. Citigroup Global Mkts., Inc.*,
   No. 04-cv-4440 (N.D. Cal. Mar. 18, 2008) ....................................5, 14

*Basile v. A.G. Edwards & Sons, Inc.*,
   No. 08-CV-0338 (S.D. Cal.) ...........................................................29

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ..............................................................27

*Bogosian v. Gulf Oil Corp.*,
   561 F.2d 434 (3d Cir. 1977), *cert. den.* 434 U.S. 1086 (1978) ...................19, 20

*In re Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ..........................................................30

*Bryan v. Pittsburgh Plate Glass Co.*,
   494 F.2d 799 (3d Cir. 1974) ...........................................................26

*Bullock v. Adm'r of Kircher's Estate*,
   84 F.R.D. 1 (D.N.J. 1979)................................................................26

*In re Centocor Secs. Litig. III*,
   No. 98-CV-260, 1999 WL 54530 (E.D. Pa. Jan. 27, 1999) ..............................17, 19

*In re Cephalon Sec. Litig.*,
   No. 96-CV-0633, 1998 WL 470160 (E.D. Pa. Aug. 12, 1998)...........................18

*In re Chambers Developmental Secs. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995).....................................................................30

*Chemi v. Champion Mortg.*,
   No. 05-cv-1238, 2009 WL 1470429 (D.N.J. May 26, 2009) ............................18

*Chiang v. Veneman*,
   385 F.3d 256 (3d Cir. 2004) ...............................................................................16

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)............................................................................................23

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ...............................................................................12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) .......26, 27, 34, 35

*General Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)............................................................................................23

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ....................................................................passim

*Glass v. UBS Fin. Servs., Inc.*,
   No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...............................14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................34, 35

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   142 F.R.D. 588 (S.D.N.Y. 1992) ........................................................................37

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................14

*Hein v. PNC Fin. Servs. Group, Inc.*,
   511 F. Supp. 2d 563 (E.D. Pa. 2007).............................................................33, 34

*In re Honeywell Int'l Secs. Litig.*,
   211 F.R.D. 255 (D.N.J. 2002) ................................................................... 18

*Hoxworth* v. *Blinder, Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992) .................................................................... 18

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305, (3d Cir. 2008) .................................................................. 15

*In re Ikon Office Solutions, Inc.*,
   191 F.R.D. 457 (E.D. Pa. 2000)............................................................18, 32

*In re Ikon Office Solutions, Inc. Litig.*,
   209 F.R.D. 94 (E.D. Pa. 2002)..................................................25, 32, 35, 36

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*,
   Case No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009)............14, 29

*Kromnick v. State Farm Ins. Co.*,
   112 F.R.D. 124 (E.D. Pa. 1986)............................................................17

*LaChance v. Harrington*,
   965 F. Supp. 630 (E.D. Pa. 1997)........................................................26, 32

*Lake v. First Nationwide Bank*,
   900 F. Supp. 726 (E.D. Pa. 1995)........................................................28, 37

*Lenahan v. Sears, Roebuck & Co.*,
   266 Fed. Appx. 114 (3d Cir. 2008).......................................................15

*Lignore v. Hosp. of Univ. of Pa.*,
   No. 04-CV-5735, 2007 WL 1300733 (E.D. Pa. May 1, 2007) .........................12

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003)....................................................31

*Luna v. Del Monte Fresh Produce (Se.), Inc.*,
   No. 06-CV-2000, 2008 WL 754452 (N.D. Ga. Mar. 19, 2008)........................13

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ........................................................12

*In re M.L. Stern Overtime Litig.*,
   No. 07-CV-0118 (S.D. Cal.) ...............................................................29

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) .............................................................23

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...........................................................................39

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ..............................................................26

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003)........................................................31

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) ...................28

*In re Oracle Secs. Litig.*,
   No. C-90-0931, 1994 WL 502054 (N.D. Cal. June 18, 1994) ...........................37

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..............................................................21, 23, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) ...............................................22, 23, 28

*In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*,
   148 F.3d. 283 (3d Cir. 1998) ......................................................passim

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) .......................................................39

*In re RBC Dain Rauscher Overtime Litig.*,
   No. 06-03093 (D. Minn.)....................................................................29

*In re RBC Dain Rauscher Overtime Litig.*,
   703 F. Supp. 2d 910 (D. Minn. Mar. 31, 2010)..................................34

*Rosario* v. *Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ............................................................ 18

*Rosen* v. *Fid. Fixed Income Trust*,
   169 F.R.D. 295 (E.D. Pa. 1995) ......................................................... 16

*Simel v. JPMorgan Chase Co.*,
   No. 05-CV-9750 (S.D.N.Y) ................................................................ 29

*Simel v. JPMorgan Chase Co.*,
   No. 05-CV-9750 (S.D.N.Y. Jan. 5, 2011) .......................................... 14

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ..................................................... 31

*Stalnaker v. Novar Corp.*,
   293 F. Supp. 2d 1260 (M.D. Ala. 2003) ............................................. 12

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ............................................................... 15

*Thomas v. SmithKline Beecham Corp.*,
   201 F.R.D. 386 (E.D. Pa. 2001) ......................................................... 16

*Walsh v. Great Atl. & Pac. Tea Co.*,
   96 F.R.D. 632 (D.N.J. 1983) .............................................................. 25

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
   726 F.2d 956 (3d Cir. 1983) ............................................................... 26

*Weaver v. Edward Jones & Co.*,
   Nos. 08-529, 08-540 (N.D. Ohio) ....................................................... 29

*Weigner v. City of N.Y.*,
   852 F.2d 646 (2d Cir. 1988) ............................................................... 39

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995), *aff'd without op.*, 66 F.3d 314 (3d Cir.
   1995) .............................................................................................. 26, 27

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

29 U.S.C. § 201 ..................................................................................... passim

29 U.S.C. § 216(b) ........................................................................................9

Fed. R. Civ. P. 12(b)(6) ...............................................................................4

Fed. R. Civ. P. 23 ....................................................................4, 7, 37, 40

Fed. R. Civ. P. 23(a) ..................................................................15, 16, 20

Fed. R. Civ. P. 23(a)(1) ...........................................................................15

FED. R. CIV. P. 23(a)(2) ......................................................................16, 17

FED. R. CIV. P. 23(a)(3) ......................................................................18, 19

Fed. R. Civ. P. 23 (a)(4) ..........................................................................19

FED. R. CIV. P. 23(b) .................................................................................20

Fed. R. Civ. P. 23(b)(3) ................................................................21, 22, 25

FED. R. CIV. P. 23(e) ..................................................................................25

Fed. R. Civ. P. 23(e)(1)(B) .......................................................................39

Rules Enabling Act, 28 U.S.C. § 2072(b) (2005) ......................................4

**State: Statutes, Rules, Regulations, Constitutional Provisions**

§ 260.3 of the Pennsylvania Wage Payment and Collection Law .............................4

**Other Authorities**

7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 1777 (2d ed. 1986) ......................................21

*Manual for Complex Litigation (Third)* § 30.43 (1995) ..........................27

## I.   INTRODUCTION[1]

Plaintiff Sheldon Lehman ("Lehman" or "Plaintiff"), on behalf of himself and all others similarly situated, and Defendant Citigroup Global Markets, Inc. ("Defendant" or "CGMI") (together, "the Parties") jointly move this Court for final approval of the proposed class and collective action settlement ("Settlement") which was preliminarily approved by this Court on May 11, 2010.  *See* Dkt. Entry No. 101.[2]

The proposed Settlement provides significant benefits to members of the Settlement Classes from the gross settlement amount of $394,220.00.[3] Significantly, unlike settlements reached in other wage and hour actions on behalf

---

[1]     Plaintiff incorporates herein by reference the parties' Memorandum of Law in Support of Joint Motion for Preliminary Approval of Settlement, filed on April 30, 2010, and attachments thereto.  *See* Dkt. Entry No. 98.  All capitalized terms throughout shall have the meanings ascribed to them in the parties' Joint Stipulation and Settlement Agreement (the "Stipulation"), attached as Exhibit A to the Declaration of Robert J. Gray ("Gray Declaration") filed contemporaneously herewith.

[2]     Following the Court's grant of preliminary approval, the Parties discovered that due to an inadvertent data error, 76 members of the FLSA Settlement Class (the Supplemental Class Members) were excluded from Defendant's class list and did not receive Notice.  On September 20, 2010, the Court approved the Parties' agreement to amend the Stipulation to remedy the error.  *See* Dkt. Entry No. 103, Order attached as Exhibit B to the Gray Declaration.  Among other things, the September 20, 2010 Order provided for an $8,400.00 increase in the FLSA Settlement Consideration and mailing of Notice to the Supplemental Class Members.

[3]     As explained above, the original total Settlement Consideration of $385,820.00 was increased by $8,400.00 for FLSA Settlement Class Members.

of stock brokers, the proposed Settlement is non-reversionary.   Moreover, not a single person has objected to any aspect of the proposed Settlement and no member of the Pennsylvania Settlement Class has opted-out of the Settlement.

The Settlement is fair, reasonable and adequate under the governing standards for evaluating class action settlements in the Third Circuit, and certification of a class and collective action for settlement purposes only is eminently appropriate.   As all prerequisites for approval of the Settlement have been met, the Parties respectfully request that final approval be granted.

## II.   BACKGROUND

### A.   History of the Litigation

#### 1.   Investigation of Plaintiff's Claims

Prior to filing the complaint in this action, Class Counsel conducted a thorough investigation into Plaintiff's claims and allegations.   Class Counsel's efforts included: (i) a review of documents produced by individuals employed by Legg Mason Wood Walker, Inc. ("Legg Mason"); (ii) a review of publicly-available materials (including government agency filings) relating to the classification of Securities Brokers; (iii) a review of publicly-available material regarding Legg Mason, Inc. ("LMI") and CGMI's corporate structure; and (iv) interviews of numerous former Legg Mason employees. [4]   These efforts enabled

---

[4]      Plaintiff originally commenced this action against LMI.   Legg Mason

Plaintiff to assess the applicable compensation practices at issue in this action.

### 2.      Pleadings, Motion Practice and Discovery

Plaintiff filed suit on December 29, 2006 in the United States District Court for the Middle District of Pennsylvania alleging a wage and hour collective and class action against LMI to recover, *inter alia*, unpaid wages and overtime compensation arising from LMI's alleged misclassification of Legg Mason Securities Brokers as exempt from federal and Pennsylvania wage and hour laws. Plaintiff alleged that Securities Brokers did not meet the test for "exempt" status under either the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") or applicable Pennsylvania labor laws. Plaintiff filed an amended complaint against LMI on April 25, 2007, adding as a Defendant CGMI as successor-in-interest to Legg Mason.

LMI and CGMI both filed motions to dismiss Plaintiff's amended complaint. LMI moved to dismiss all claims against it, arguing, *inter alia*, that it was not Plaintiff's "employer" and, as a result, was not liable for any alleged wages owing to Plaintiff or putative class members. Plaintiff opposed LMI's motion, arguing that the determination of whether LMI was an employer under the FLSA or whether LMI conveyed or retained liability for alleged state and federal

---

operated as the retail division of LMI. On December 1, 2005, LMI and CGMI engaged in a financial transaction in which CGMI exchanged its worldwide asset management business for LMI's brokerage and capital markets business, including Legg Mason.

labor law violations occurring prior to its sale of Legg Mason to CGMI could not be resolved on a FED. R. CIV. P. 12(b)(6) motion. LMI also contended that Plaintiff's Pennsylvania state law class action claims had to be dismissed because they irreconcilably conflicted with the Congressional intent of the FLSA and violated the Rules Enabling Act, 28 U.S.C. § 2072(b) (2005) ("REA"). Lastly, LMI sought dismissal of Plaintiff's claims under § 260.3 of the Pennsylvania Wage Payment and Collection Law ("PWPCL") on the grounds that this section does not give rise to a claim unless an employer fails to pay wages agreed as already owing and due.

CGMI's motion to dismiss was substantially similar to LMI's in that it argued that Plaintiff's state law claims run counter to the Congressional intent of the FLSA and that the opt-out provisions of a Rule 23 class action are not superior to, and conflict with, the FLSA's opt-in procedures. LMI's motion was granted only as to Plaintiff's PWPCL claim for failure to pay all wages due. *See* Dkt. Entry No. 50. CGMI's motion to dismiss was denied in all respects. *Id*.

On September 20, 2007, the Court ordered the Parties to engage in limited discovery necessary to determine Plaintiff's proper employer. *Id*. After Class Counsel conducted the required discovery, the Parties filed a stipulation with the Court on July 14, 2008 for Plaintiff's voluntary dismissal of all claims against LMI without prejudice. *See* Dkt. Entry No. 66.

4

On August 26, 2008, after consideration of the Parties' joint status report and second-phase case management plan, the Court imposed several case management deadlines, including a deadline for the second phase of discovery. *See* Dkt. Entry No. 70.  As explained above, the first phase of discovery was intended to determine (i) the identity of Plaintiff's employer; and (ii) whether there exists a group of employees who were originally hired by Legg Mason and who continued to work following the transaction between LMI and CGMI and whose putative claims are not covered by the settlement of claims in *Bahramipour v. Citigroup Global Mkts., Inc.,* No. 04-cv-4440 (N.D. Cal. Mar. 18, 2008).[5]  The second phase of discovery was focused on whether Mr. Lehman was entitled to overtime compensation as a matter of law.  During the intervening months, the Parties engaged in extensive formal discovery.  CGMI produced approximately one thousand pages of documents and the Parties exchanged and responded to interrogatories.  Additionally, Plaintiff and corporate representatives from CGMI were deposed.

### 3.    Settlement Negotiations

The Court-mandated second phase of discovery in this action, which focused on whether Mr. Lehman was entitled to overtime compensation as a matter of law, ended on June 15, 2009.  Any and all motions relating to the second phase of

---

[5]    *Bahramipour* was a class and collective action settlement of wage and hour claims against Smith Barney on behalf of stockbrokers nationwide.

discovery were due to be filed by July 17, 2009.  Prior to the filing of any such motions, Class Counsel and counsel for Defendant had preliminary discussions concerning a mutual desire to engage in meaningful settlement negotiations.  Both sides had conducted extensive discovery and were thoroughly familiar with the applicable facts as well as the strengths and weaknesses of their respective legal positions. In order to permit the Parties to focus their attention on settlement efforts, the Court granted the Parties' joint request to extend the deadline for filing any motions relating to the second phase of discovery to October 29, 2009.  *See* Dkt. Entry No. 85.

On October 8, 2009, the Parties participated in a full-day mediation session before former Eastern District of Pennsylvania Magistrate Judge Diane Welsh, a well-respected mediator experienced with wage and hour litigation.  During the mediation, the Parties agreed to settle this litigation.  The terms of settlement are memorialized in the Parties' Stipulation.  The mediation before Magistrate Judge Welsh was complex and vigorous, and both sides argued their positions strenuously.  The Parties engaged in an extensive exchange of information and analysis regarding their respective settlement positions, including information relating to the number of putative class members and work months, Defendant's compensation practices, applicable law and various damages analyses.  Plaintiff believes that the proposed Settlement represents a reasonable compromise in light

of the risks and costs of further litigation.

## III.   TERMS OF THE PROPOSED SETTLEMENT

As indicated above, the terms of the proposed Settlement are set forth in the

Stipulation.   There are no undisclosed side agreements between Plaintiff and

CGMI.  The essential terms of the Settlement are as follows:

(i)     The Parties stipulate to: (a) collective action certification for settlement purposes only of Plaintiff's claims for violations of the FLSA; and (b) class certification, for settlement purposes only, of Plaintiff's claims for violations of the Pennsylvania labor laws pursuant to FED. R. CIV. P. 23. The Pennsylvania Settlement Class is comprised of persons employed by Legg Mason in a Covered Position at a Pennsylvania branch at any time between December 29, 2003 and December 30, 2005 (the "Pennsylvania Class Period").   The FLSA Settlement Class is comprised of persons employed by Legg Mason in a Covered Position at any branch outside of Pennsylvania at any time between June 30, 2005 and December 30, 2005 (the "FLSA Class Period");

(ii)    Subject to the occurrence of the Effective Date[6], CGMI will pay to the Claims Administrator, within ten days thereafter, the sum of $394,220.00, which reflects the sums of $246,620.00 (the "Pennsylvania Settlement Consideration") and $147,600.00 (the "FLSA Settlement Consideration").[7] The Claims Administrator shall deposit these Settlement amounts in a

---

[6]     The "Effective Date" is defined in the Stipulation as the date when the Judgment becomes a Final Judgment.

[7]     The FLSA Settlement Consideration originally agreed to by the parties (as reflected in both the Stipulation and the parties' motion for preliminary approval of the proposed Settlement) was $139,200.00.   However, as explained above, following the discovery that 76 FLSA Settlement Class Members (Supplemental Class Members) were inadvertently excluded from the original class list, the FLSA Settlement Consideration was increased by $8,400.00 (to $147,600.00), as reflected in the September 20, 2010 Stipulation and Order Amending the Joint Stipulation and Settlement Agreement.  *See* Dkt. Entry No. 103.

qualified settlement fund until distribution of Administrative Costs[8] and distribution to the Participating Class Members of their individual shares of the Settlement amounts.  Within thirty (30) days of the Effective Date, the Claims Administrator shall mail to each Participating Class Member his or her individual payment less tax deductions and withholdings;

(iii)   The Settlement is only a partial claims-made settlement.  Ninety-five percent (95%) of the Pennsylvania Settlement Consideration will be paid directly to Pennsylvania Settlement Class Members, who did not need to submit a claim form to receive such recovery.   Unless a Pennsylvania Settlement Class Member elected to opt-out of the Settlement—which none have done—he or she will receive a share of the Pennsylvania Settlement Consideration.  In accordance with FLSA jurisprudence, members of the FLSA Settlement Class needed to submit valid Claim Form and Consent to Join Settlement Class ("Claim Form(s)") to participate in the Settlement;

(iv)   As proposed, the Settlement was largely non-reversionary—that is, the only funds that were to revert to CGMI were funds attributed to members of the Pennsylvania Settlement Class who chose to opt-out of the Settlement.[9]   If any portion of the Pennsylvania Settlement Consideration allocated to the Released Federal Claims is not distributed to members of the Pennsylvania Settlement Class employed during the FLSA Class Period

---

[8]     The term "Administrative Costs" as defined in the Stipulation means, subject to Court approval: (a) a sum not to exceed $45,000.00, available to be paid to the Claims Administrator, with any additional costs incurred by the Claims Administrator to be deducted from the Settlement amounts and not charged to CGMI (pursuant to the September 20, 2010 Stipulation and Order Amending the Joint Stipulation and Settlement Agreement, CGMI is responsible for paying the costs associated with sending Notice to the Supplemental Class Members); (b) the maximum amount of seventeen percent (17%) of the Settlement Considerations available to be paid to Class Counsel for attorneys' fees; (c)  the maximum amount of $15,000.00 available to be paid to Class Counsel for reasonable litigation costs incurred; (d) the maximum amount of $7,500.00 available to be paid as an Enhancement Award to the Class Representative; and (e) any and all other costs in connection with the consummating the terms of this Stipulation, including the costs of all Notices.

[9]     As of the date of this filing no Pennsylvania Settlement Class Members have chosen to opt-out of the Settlement.  *See* Declaration of Loree Kovach ("Kovach Declaration"), ¶¶ 10-11, attached as Exhibit C to the Gray Declaration.

because those members did not file timely and complete Claim Forms, such consideration shall not revert to CGMI, but instead shall be reapportioned for distribution among the Participating Pennsylvania Class Members who submitted valid Claim Forms.   Likewise, if any portion of the FLSA Settlement Consideration is not distributed to members of the FLSA Settlement Class because those members did not file timely and complete Claim Forms, that consideration shall not revert to CGMI, but instead shall be reapportioned for distribution among the Participating FLSA Settlement Class Members.  Finally, any portion of Class Counsel's fees and costs that are not approved or awarded by the Court shall be included in the Settlement amounts and distributed to Participating Class Members;

(v)    Each Class Member received either a "Notice to Pennsylvania Settlement Class Members Regarding Pendency of a Class and Collective Action and Notice of Hearing on Proposed Settlement" or a "Notice to FLSA Settlement Class Members Regarding Pendency of a Class and Collective Action and Notice of Hearing on Proposed Settlement" in the forms prescribed by the Stipulation (attached as Exhibits 1 and 2, respectively, to the Kovach Declaration);[10]

(vi)    The Parties retained the professional claims administration firm of Settlement Services, Inc. ("SSI" or the "Claims Administrator") to mail the Class Notice and to perform other required claims administration services as set forth in the Stipulation;

(vii)    Class Notice recipients had the option to: (1) file a valid and timely Claim Form to join or "opt-in" to the lawsuit pursuant to 29 U.S.C. § 216(b) and accept the terms of the FLSA Settlement (FLSA Settlement Class Members); (2) "Opt-Out" of the Pennsylvania Settlement Class and thus exclude themselves from the Litigation, the Settlement, any distributions and not be bound by the release of claims (Pennsylvania Settlement Class Members); (3) Object to the settlement (Pennsylvania Settlement and FLSA Settlement Class Members); or (4) do nothing which will have the effect, depending on class membership, of (i) accepting the terms of the settlement,

---

[10]    Pursuant to the September 20, 2010 Stipulation and Order Amending the Joint Stipulation and Settlement Agreement, CGMI provided the Claims Administrator with the names and Last Known Addresses for each of the Supplemental Class Members, and Notice was promptly sent to them.  *See* Kovach Declaration, ¶¶ 7-8.

receive payment and be bound by the settlement's terms  (Pennsylvania Settlement Class Members) or, not receiving a settlement payment for failure to opt-in but not releasing claims (FLSA Settlement Class Members and Pennsylvania Settlement Class Members' Released Federal Claims);

(viii)  Pennsylvania Settlement Class Members who did not opt-out of the Settlement are deemed to have released the Released State Law Claims that accrued during the period beginning on December 29, 2003 and ending on December 30, 2005.  In addition, only FLSA Settlement Class Members and Pennsylvania Settlement Class Members who filed Claim Forms will release their Released Federal Law Claims that accrued during the period beginning on June 30, 2005 and ending on December 30, 2005;

(ix)  Pursuant to the Stipulation, Plaintiff's attorneys are requesting an award of attorneys' fees in the amount of $65,589.40, which represents 16.6% of the Settlement Consideration, and $15,000.00 for allowable litigation costs and expenses; and

(x)  Pursuant to the Stipulation Class Counsel are requesting an Enhancement Award of $7,500.00 for the Plaintiff for his efforts in this case, including the burden and risks associated with bringing this action publicly.

Plaintiff's requests for (1) attorneys' fees, (2) litigation costs (expenses related to prosecuting and resolving these claims), and (3) an Enhancement Award for the Class Representative, are subject to the Court's approval at the Final Fairness Hearing.[11]

Pursuant to this Court's May 11, 2010 Order granting preliminary approval of the proposed Settlement, the Claims Administrator effectuated the above Notice Plan and, on June 10, 2011, the Claims Administrator sent, via first class mail,

---

[11]    Plaintiff has filed contemporaneously herewith the Unopposed Motion of Class Counsel for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and an Enhancement Award to the Class Representative.

Class Notice to the 1,187 FLSA Settlement Class Members and the 243 Pennsylvania Settlement Class Members at their Last Known Address. *See* Kovach Declaration, ¶ 6.[12]  Following the discovery that seventy-six (76) FLSA Settlement Class Members (Supplemental Class Members) were inadvertently excluded from the original class list, in September 2010 CGMI provided to the Claims Administrator the names and Last Known Addresses for the Supplement Class Members pursuant to the Parties' stipulation (and the Court's Order) amending the Stipulation.  *Id.* at ¶ 7.  On October 1, 2010, the Claims Administrator sent Notice to these individuals. *Id.* at ¶ 8.[13]

In short, Settlement Class Members were readily apprised of the terms of the Settlement and important dates in the settlement process.  In addition, they were given an opportunity to comment on Plaintiff's requests for attorneys' fees and reimbursement of litigation costs and expenses.  Significantly, no Settlement Class Members have objected to, or chosen to opt-out of, the Settlement.

## IV.   THE PROPOSED SETTLEMENT IS FAIR AND ADEQUATE TO THE MEMBERS OF THE SETTLEMENT CLASSES

When employees bring a private action for back wages under the FLSA and

---

[12]    Prior to mailing the Notice, the Claims Administrator ran the names and Last Known Addresses for each of the Settlement Class Members and Supplemental Class Members through the National Change of Address Database to ascertain the accuracy of the Last Known Addresses.  *See* Kovach Declaration, ¶¶ 5, 8.

[13]    The deadline for Supplemental Class Members to include themselves in the Settlement or otherwise object was December 1, 2010.  *See* Dkt. Entry No. 103 at pp. 2-3.

present a proposed settlement for consideration, the district court should enter a

stipulated judgment after scrutinizing the settlement for "fairness," and

determining that the settlement is a "reasonable compromise of disputed issues

than a mere waiver of statutory rights . . . ." *Lignore v. Hosp. of Univ. of Pa.*, No.

04-CV-5735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (citing *Lynn's Food

Stores, Inc. v. United States*, 679 F.2d 1350, 1353-1354 (11th Cir. 1982)); s*ee also

Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010) (noting that

settlements of disputed claims, especially those of complex class action litigation,

are clearly favored by courts).   In the *Lynn's Food Stores* case, the court further

explained the rationale for this standard:

> Settlements may be permissible in the context of a suit brought by
> employees under the FLSA for back wages because initiation of
> the action by the employees provides some assurance of an
> adversarial context.   The employees are likely to be represented by
> an attorney who can protect their rights under the statute.   Thus,
> when the parties submit a settlement to the court for approval, the
> settlement is more likely to reflect a reasonable compromise of a
> disputed issues than a mere waiver of statutory rights brought
> about by an employer's overreaching.   If a settlement in an
> employee FLSA suit does reflect a reasonable compromise over
> issues, such as FLSA coverage or computation of back wages that
> are actually in dispute, we allow the district court to approve the
> settlement **in order to promote the policy of encouraging
> settlement of litigation**.

*Id.* (emphasis added); *see also Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260,

1263 (M.D. Ala. 2003) (approving settlement upon finding that there were *bona

fide* disputes over FLSA provisions and the settlement was a fair and reasonable

resolution of the *bona fide* disputes); and *Luna v. Del Monte Fresh Produce (Se.), Inc.*, No. 06-CV-2000, 2008 WL 754452, at *12 (N.D. Ga. Mar. 19, 2008) (in the context of settling FLSA claims, the court reviews the proposed settlement to ensure that it is "fair and reasonable."). As is discussed more fully below, the proposed Settlement is a "fair and reasonable settlement of a *bona fide* dispute."

## V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASSES

The benefits of the proposed Settlement can be realized only through the certification of the proposed Settlement Classes. Plaintiff requests that the Court certify the following proposed Pennsylvania Settlement Class for settlement purposes only:

> "All persons employed by Legg Mason Wood Walker, Inc. in a Covered Position in Pennsylvania during the period beginning on December 29, 2003 and ending on December 30, 2005."

Plaintiff further requests that the Court certify the following proposed FLSA Settlement Class for settlement purposes only:

> "All persons employed by Legg Mason Wood Walker, Inc. in a Covered Position at any branch outside of Pennsylvania at any time between June 30, 2005 and December 30, 2005."

Plaintiff requests that the Court certify the aforementioned Classes for settlement purposes only.[14] Courts have routinely granted similar requests for

---

[14] Importantly, Defendant has agreed to certification of the Settlement Classes for settlement purposes only.

certification to facilitate nationwide wage and hour settlements involving financial consultants/stockbrokers. *See, e.g., Simel v. JPMorgan Chase Co.*, No. 05-CV-9750 (S.D.N.Y. Jan. 5, 2011) (Order and Final Judgment); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, (E.D. Pa. July 16, 2009) (Judgment and Order of Dismissal); *Steinberg v. Morgan Stanley & Co.,* No. 06-2628 (S.D. Cal. July 10, 2009) (Order Granting Final Approval of Class Action Settlement and Awarding Attorneys' Fees, Litigation Expenses, and Plaintiff Enhancements and Final Judgment); *Bahramipour v. Citigroup Global Mkts., Inc*., No. 04-04440 (N.D. Cal. Mar. 18, 2008) (Order (1) Granting the Class Representatives' Motion for Final Approval of Class Action Settlement; (2) Granting Class Counsel's Motion for Attorney's Fees and Litigation Expenses; and (3) Granting in part Class Counsel's Motion for Plaintiff Enhancements); *Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (Order (1) Granting Joint Motion for Final Approval of Settlement; (2) Granting Class Counsel's Application for Attorney's Fees, Costs and Class Representative Enhancements).

Likewise, the Supreme Court of the United States confirmed not only the viability, but the desirability, of such settlement classes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). So, too, have the federal courts of appeal. *See, e.g., In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d

283, 316 (3d Cir. 1998); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

## A.  The Rule 23(a) Prerequisites Are Satisfied

To properly maintain a class action, a plaintiff must first satisfy the prerequisites of Federal Rule of Civil Procedure 23(a).  The four prerequisites of Rule 23(a) are that:

(1)  the class be so numerous that joinder of all members is impracticable;

(2)  there be questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties be typical of the claims or defenses of the class; and

(4)  the representative parties will fairly and adequately protect the interests of the class.

*See* FED. R. CIV. P. 23(a); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, n. 6. (3d Cir. 2008); *Lenahan v. Sears, Roebuck & Co.*, 266 Fed. Appx. 114, 199 (3d Cir. 2008).

## 1.  Rule 23(a)(1) – "Numerosity"

The Pennsylvania Settlement Class is sufficiently numerous.  *See In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,* 148 F.3d at 309, *cert. denied* 525 U.S. 1114 (1999) (quoting FED. R. CIV. P. 23(a)(1)).  It is well settled that joinder of 40 or more members will be impracticable.  *See Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) ("No minimum number of

plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."). Here, with at least 239 potential members of the Pennsylvania Settlement Class, numerosity is readily satisfied.

### 2. Rule 23(a)(2) – "Commonality"

Rule 23(a)(2) may be satisfied where the proposed class representative(s) share at least one question of fact or law with the claims of the prospective class. *Baby Neal for & by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994); *See also In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,* 148 F.3d at 310. "Commonality exists when proposed class members challenge the same conduct of the defendants." *Rosen* v. *Fid. Fixed Income Trust,* 169 F.R.D. 295, 298 (E.D. Pa. 1995). As noted by the Third Circuit, the commonality requirement "is not a high bar." *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). *See also Baby Neal*, 43 F. 3d at 56 ("Because the requirement may be satisfied by a single common issue, it is easily met.").

Rule 23(a)(2) "commonality" does not require that all factual or legal issues be common to the entire class. *See Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 392 (E.D. Pa. 2001) ("Because Rule 23(a)(2) requires only a single issue common to all members of the class, the requirement is easily met, and commonality is not defeated by a showing that individual facts and circumstances

will have to be resolved." [citations omitted]).   Rather, the Rule 23 (a)(2) commonality requirement will be satisfied even if the class members share only one common question of fact or law.   *See Baby Neal*, 43 F.3d at 56; *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d at 310:

> A finding of commonality does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class member do not defeat certification. *The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.*

*Id.* [emphasis added, citations omitted].

A common question is "one which arises from a 'common nucleus of operative facts' regardless of whether 'the underlying facts fluctuate over the class period and vary as to individual claimants.'"   *In re Centocor Secs. Litig. III*, No. 98-CV-260, 1999 WL 54530, at *2 (E.D. Pa. Jan. 27, 1999) (quoting *Kromnick v. State Farm Ins. Co.,* 112 F.R.D. 124, 128 (E.D. Pa. 1986)).

Here, the overarching question of law and fact applicable to all Settlement Class Members is whether the payment of wages to Legg Mason employees in Covered Positions violated applicable wage and hour laws.   As noted above, Legg Mason categorically classified these employees as exempt, and hence Plaintiff contends that the exempt status of employees in Covered Positions may be decided on a class-wide basis.   This "shared legal issue" is sufficient to support certification under Rule 23(a)(2) in the context of settlement.

### 3.    Rule 23(a)(3) – "Typicality"

"Typicality requires the Court to determine 'whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members." *Chemi v. Champion Mortg.*, No. 05-cv-1238, 2009 WL 1470429, at *7 (D.N.J. May 26, 2009).   Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiff(s) as a representative of the class.  *Baby Neal,* 43 F.3d at 57. "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."   *Hoxworth* v. *Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992); *In re Honeywell Int'l Secs. Litig.,* 211 F.R.D. 255, 260 (D.N.J. 2002); *In re Cephalon Sec. Litig.,* No. 96-CV-0633, 1998 WL 470160, at *2 (E.D. Pa. Aug. 12, 1998); *see also Baby Neal,* 43 F.3d at 58 (typicality requirement is satisfied despite the existence of pronounced factual distinctions between the claims of the named plaintiffs and the claims of the proposed class).  Courts "look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)."   *Rosario* v. *Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).

A plaintiff's claim is typical of class claims if it challenges the same

conduct that would be challenged by the class. *See, e.g., In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 463 (E.D. Pa. 2000); *In re Centocor Secs. Litig. III,*1999 WL 54530, at *2 (noting that typicality requirement of Rule 23(a)(3) is satisfied where "litigation of the named plaintiffs' claims can reasonably be expected to advance the interests of absent class members") (quoting *Arch v. Am. Tobacco Co.,* 175 F.R.D. 469, 478 (E.D. Pa. 1997); *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d at 311-12 (holding that typicality was satisfied by allegedly fraudulent scheme applying to all class members, even if different illegal sales practices were used on different beneficiaries).

Here, Plaintiff's claims are clearly typical of those of the proposed Class. Each member of the Pennsylvania Settlement Class was an employee of Legg Mason, was classified as exempt from applicable wage and hour laws, and was subsequently denied overtime compensation as a result thereof. Accordingly, Plaintiff's claims are typical of the claims of the Pennsylvania Settlement Class within the meaning of Rule 23(a)(3).

### 4.    Rule 23(a)(4) – "Adequacy of Representation"

Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class," FED. R. CIV. P. 23 (a)(4). The Third Circuit has noted that Rule 23(a)(4), insures "[t]hat the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit."

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. den.* 434 U.S. 1086 (1978).   Under the test articulated by the Third Circuit in *Bogosian*, two prongs must be satisfied: (1) the absence of any actual conflict of interest between the representative plaintiffs and other class members; and (2) the presence of competent counsel to represent the class.  *Id.*

Here, there are no conflicts of interest or other antagonisms between Plaintiff on the one hand, and class members, on the other.  All were former employees employed by LMI in a Covered Position with the mutual incentive to establish the alleged violations of the PMWA and FLSA.  All Pennsylvania Settlement Class Members were impacted by the employment practices at issue in an identical manner.  Furthermore, Plaintiff's attorneys are well-qualified, highly experienced, and able to skillfully conduct the litigation on behalf of Pennsylvania Settlement Class Members.  Class Counsel provided fair and vigorous representation for the Class.  Class Counsel have substantial experience in similar class action litigation and have regularly been deemed to be adequate class counsel.[15]

### B.    The Class May Be Properly Certified Under Rule 23(b)

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Federal Rule of Civil

---

[15] *See* Gray Declaration.

Procedure 23(b).  Rule 23(b) provides in pertinent part:

> (b)   **Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:
>
> . . . .
>
>> (3)  the court finds that the questions of law or fact common to the members of the class predominate over any issues affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These requirements are satisfied here for settlement purposes.

### 1.    Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods v. Windsor*, 521 U.S. 591, 594 (1997).   In *Amchem,* the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation."   521 U.S. at 594.   "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."   7A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 1777 (2d ed. 1986).   Furthermore, variations in state law do not necessarily preclude use of the class action mechanism.   *Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 821-23 (1985).

In the instant case, questions of law or fact common to the members of the class predominate over questions affecting individual members.  Plaintiff and the Pennsylvania Settlement Class Members are all former Securities Brokers in similar positions who were employed by LMI.  All of them were subject to Defendant's employment policies alleged to be in violation of the PMWA and FLSA.  These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) (collecting cases).

### 2.   A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a.   Most Class Members Have An Insufficient Interest To Justify Individual Lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co*, 472 U.S. at 809. This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

The class action mechanism for settlement is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). The claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of class members. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 522-23. Requiring over 200 former LMI employees to file individual lawsuits would needlessly waste judicial resources in the event of litigation, since Plaintiff contends that each lawsuit would likely

23

involve the same evidence.  Thus, the most efficient way of resolving these claims is through a single class action, such as the present action, before a single fact finder. This factor thus plainly supports certification for settlement purposes.

> **b.**    **The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class**

There are no other class actions presently pending against Defendant which asserts any of the claims pending before this Court.  Therefore, this factor also supports settlement class certification.

> **c.**    **This Court Is An Appropriate Forum For Resolution Of The Claims In Dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, has personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Settlement Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient.  *Phillips Petroleum Co.,* 472 U.S. at 811-812.

> **d.**    **Manageability**

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial.  *Amchem*, 521 U.S. at 620;  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions.,* 148 F.3d at 316 n.57.

## VI.   THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A.   Final Approval Of The Settlement Is Within The Sound Discretion Of The Court And Is Favored By Strong Judicial Policy

In addition to determining whether the proposed settlement class satisfies the requirements of FED. R. CIV. P. 23(b)(3), the Court should separately conclude that the proposed settlement is "fair, reasonable and adequate."   *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 316.   "Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims."   *Id.*   (citation omitted).   *See also In re Ikon Office Solutions, Inc. Litig.*, 209 F.R.D. 94, 100 (E.D. Pa. 2002) ("court must decide whether the proposed settlement itself is fair to parties and relevant third parties.") (citing FED. R. CIV. P. 23(e)).   A number of well-settled factors guide the Court's fairness review.

Under Rule 23(e) of the Federal Rules of Civil Procedure, this Court must determine whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks and factors of litigation.   *See Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642 (D.N.J. 1983).   The range "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any

litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Because a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a court reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving issues left unresolved by the settlement. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974); *Bullock v. Adm'r of Kircher's Estate*, 84 F.R.D. 1, 4 (D.N.J. 1979). As stated in *LaChance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997):

> If a settlement is to have any utility toward reducing the burden litigation places on the courts and litigants, the court must guard against conducting a mini-trial on the merits in order to determine the plaintiffs' likelihood of establishing liability.

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, *see Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1300 (D.N.J. 1995), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995), a strong judicial policy favors resolution of litigation short of trial. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995)("*GM Trucks*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). When a settlement is reached on terms agreeable to

26

all parties, it is to be encouraged.  *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16

(3d Cir. 1993).

A federal District Court within the Third Circuit articulated the rationale for

this policy as follows:

> [W]hen parties negotiate a settlement they have far greater control
> of their destiny than when a matter is submitted to a jury.
> Moreover, the time and expense that precedes the taking of such a
> risk can be staggering.  This is especially true in complex . . .
> litigation.

*Weiss*, 899 F. Supp. at 1300-01.

The proposed Settlement enjoys a presumption that it is fair and reasonable

because it is the product of arm's length negotiations conducted by experienced

counsel who are fully familiar with all aspects of class action litigation with the

assistance of a mediator.   *GM Trucks*, 55 F.3d at 785 ("This preliminary

determination establishes an initial presumption of fairness when the court finds

that: (1) the negotiations occurred at arm's length . . . (3) the proponents of the

settlement are experienced in similar litigation . . . ."); *see also Manual for

Complex Litigation (Third)* § 30.43 (1995).  Although a court must independently

evaluate a proposed settlement, the court should credit the judgment of

experienced counsel in doing so.  Conversely, the reviewing court must avoid

substituting its image of an "ideal settlement" for the views of the "compromising

parties," and must keep in mind the fact that a settlement is, after all, "a

27

compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 534.  As one court noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . .  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.
>
> . . .
>
> Neither the district court nor this court is empowered to re-write the settlement agreed upon by the parties.  We may not delete, modify, or substitute certain provisions of the consent decree.  Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must be given or withheld . . . .  In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (*citing Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)).

Here, Class Counsel are fully familiar with the facts and law applicable to this litigation and are well acquainted with the prosecution of class actions,

generally, and with class-based wage and hour law claims, in particular.[16]   Before

entering into the Settlement, Class Counsel took into account, among other things,

the nine factors that the Third Circuit has identified as being relevant to the

determination of whether a class settlement is fair, reasonable and adequate.   The

evaluation of those factors resulted in Class Counsel's recommendation that the

proposed settlement be accepted as fair, reasonable and adequate as is set forth

below.

### B.    The Settlement is Fair, Reasonable And Adequate

### 1.    The *Girsh* Factors Support The Settlement

The Court of Appeals for the Third Circuit has adopted a set of nine factors

to be considered in determining whether a proposed settlement is fair, reasonable

and adequate: (1)  the complexity and duration of the litigation; (2) the reaction of

the class to the settlement; (3) the stage of the proceedings; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of

maintaining a class action; (7) the ability of the defendant to withstand a greater

---

[16]     Class Counsel in the instant action have also been counsel of record in
several directly analogous wage and hour class actions.   *See, e.g., Simel v.
JPMorgan Chase Co*., No. 05-CV-9750 (S.D.N.Y); *In re RBC Dain Rauscher
Overtime Litig.*, 06-03093 (D. Minn.); *In re Janney Montgomery Scott LLC Fin.
Consultant Litig.*, No. 06-CV-03202 (E.D. Pa.); *Basile v. A.G. Edwards & Sons,
Inc.*, No. 08-CV-0338 (S.D. Cal.); *Weaver v. Edward Jones & Co*., Nos. 08-529,
08-540 (N.D. Ohio); and *In re M.L. Stern Overtime Litig.,* No. 07-CV-0118 (S.D.
Cal);.  It is the opinion of Class Counsel that this Settlement compares favorably
with settlements reached in these actions.

judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and, (9) the range of reasonableness of the settlement in light of all the attendant risks of the litigation. *Girsh,* 521 F.2d at 157; *In re Chambers Developmental Secs. Litig.*, 912 F. Supp. 822, 836-41 (W.D. Pa. 1995), recently reaffirmed in *In re Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009).

The following application of these factors to the proposed Settlement demonstrates that it is fair, reasonable and adequate and should be approved.

### 2.   Complexity, Expense And Likely Duration Of The Litigation

The Third Circuit has consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement.  Prior to the Parties reaching the Settlement at mediation, this litigation had gone on for almost three years and was diligently litigated by both sides.  The proposed settlement permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Settlement Class.  A trial on the merits, and preparing for the same, would require each side to incur considerable expenses.  The trial result would not necessarily end the litigation, giving the losing party the right to appeal.  This result will be accomplished at least months, and perhaps years, earlier than otherwise might be possible absent a settlement.  Standing alone, the relatively expeditious resolution of the claims in dispute benefits the class.   All of these factors weigh in favor of final approval of

the Settlement.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 642

(E.D. Pa. 2003) (noting that the "protracted nature of class action antitrust

litigation means that any recovery would be delayed for several years," and

"substantial and immediate benefits" to class members favors settlement approval);

*Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (where

litigation is potentially lengthy and will result in great expense, settlement is in the

best interest of the class members).

### 3.    Reaction Of The Class To The Settlement

Courts within the Third Circuit have held that the response of the class to

notice of a proposed settlement can be a significant factor under the *Girsh*

paradigm:  "The reaction of the class is perhaps the most significant factor to be

weighed in considering [the settlement's] adequacy."  *O'Keefe v. Mercedes-Benz

USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003).   Significantly, following the

sending of Notice to Class Members there have been no objections to, nor requests

for exclusion from, the Settlement.   Accordingly, this fact strongly recommends

final approval of the settlement.

### 4.    Stage Of The Proceedings And The Amount Of Discovery Completed

The factual background comprising this factor has been addressed above.

Hence, Class Counsel respectfully refer the Court to Section II *supra*.  Further, the

Parties have engaged in significant discovery to date—including propounding and

responding to Interrogatories and Requests for Production of Documents and depositions of the Plaintiff and Defendant's corporate witnesses.  In short, Plaintiff has engaged in sufficient discovery to be fully informed about the appropriateness of the proposed Settlement.  This factor weighs in favor of final approval of the Settlement.

### 5.    Risks Of Establishing Liability And Damages [17]

"These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Ikon*, 209 F.R.D. at 105 (*quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 319. The *Ikon* court went on to explain:

> For example, if it appears that further litigation would realistically risk dismissal of the case on summary judgment or an unsuccessful trial verdict, it is in the plaintiffs' interests to settle at a relatively early stage. In contrast, if it appears that liability is extraordinarily strong, and it is highly likely that plaintiffs would prevail at trial, settlement might be less prudent. On this issue, the court should avoid conducting a mini-trial and must to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.

*Id.* at 105-06 (citing *LaChance v. Harrington,* 965 F. Supp. 630, 638 (E.D. Pa. 1997).

---

[17]    Courts reviewing settlement in analogous actions have combined their analysis of the inherently related fourth and fifth *Girsh* "fairness" factors.  *See, e.g., In re Ikon,* 209 F.R.D. at 105.

In the instant matter, liability, damages and class certification would be highly contested issues.  While Plaintiff believes that his claims are meritorious, he still faced very real risks in establishing liability.   Invariably, Defendant would assert that it has a strong argument that all FLSA claims are time-barred. Moreover, Defendant asserts that it has a very strong defense to the FLSA and Pennsylvania labor law claims on the merits, based on its view that Plaintiff was properly classified as an exempt employee.  Significantly, in *Hein v. PNC Fin. Servs. Group, Inc.*, 511 F. Supp. 2d 563 (E.D. Pa. 2007) (Diamond, J.), a Court sitting in the Eastern District of Pennsylvania granted summary judgment in favor of the defendant in the context of unpaid overtime claims asserted by a financial advisor under the FLSA.

In the context of this litigation, the risks that Plaintiff faced in establishing liability are manifest, and this factor thus favors approval of the proposed Settlement.

### 6.    Risks Of Maintaining The Class Action Through The Trial

A district court in this Circuit evaluating a class action settlement noted that:

> The value of a class action depends largely in the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

*Id.* at 105 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 817).

Although it is Plaintiff's belief that certification of his proposed classes would have been granted by the Court for at least some of his claims, there was certainly cause for doubt. Indeed, courts across the country have denied certification of directly analogous claims. *See, e.g., In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910 (D. Minn. Mar. 31, 2010); *Bachrach v. Chase Inv. Servs. Corp.,* No.06-cv-02785, 2007 WL 3244186 (D.N.J. Nov. 1, 2007). Based on Class Counsel's extensive experience in these kinds of cases, and Defendant's prior submissions to the Court, it is clear that Defendant would have vigorously opposed class certification. The risks associated with class certification increase the risk of maintaining the proposed class, and therefore supports settlement. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (concluding settlement was appropriate because defendants may contest class certification "thereby creating appreciable risk to the class members' potential for recovery").

### 7.    Ability Of The Defendant To Withstand A Greater Judgment

The Settlement Consideration is being paid directly by Defendant as it has not asserted any insurance coverage for the wage and hour claims asserted here. While it is arguable that CGMI could afford to pay a greater judgment, given the

economic climate and recent turmoil in the financial industry, this factor also militates in favor of settlement.

**8.   Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation[18]**

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *General Motors*, 55 F.3d at 806.   In *General Motors*, the Third Circuit further explained that:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (citation omitted.)  As previously discussed, the proposed Settlement confers a substantial benefit on members of the Settlement Classes, namely through the final Settlement Consideration in the amount of $394,220.00.  Given the relatively small size of the Settlement Classes and the short class period, this results in a very meaningful recovery.[19]

---

[18]   Courts reviewing settlement in analogous actions have combined their analysis of the inherently related final two *Girsh* "fairness" factors. *See, e.g., Ikon*, 209 F.R.D. at 108; *Global Crossing*, 225 F.R.D. at 460-461.

[19]   The total number of FLSA Settlement Class Members who submitted valid

Prior to entering into the Settlement, Class Counsel considered the uncertain outcome and the risk of any litigation, especially in a complex action such as this one, as well as the difficulties and delays inherent in any such litigation.   Class Counsel are also mindful of the inherent problems of proof (including the difficulty of establishing damages) and possible defenses available to Defendant.   *See, e.g., Ikon*, 209 F.R.D. 94 (complexity and duration of litigation of claims, combined with the expense of litigation and risk of establishing liability and damages, weighed heavily in favor of settlement).   While Class Counsel believe strongly in the merits of Plaintiff's claims, they nonetheless are cognizant of the developing body of adverse case law.   Consequently, this factor also favors final approval of the Settlement.

The Parties believe the Settlement is fundamentally fair and reasonable considering the strength of CGMI's defenses and the risk, expense, complexity and delay associated with further litigation.   In making its determination of these risks, the Court should give deference to the opinions of the Parties, who have researched the issues and are familiar with the facts of the litigation.   *See Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of

---

Claim Forms is four hundred and fifty eight (458), and the total size of the Pennsylvania Settlement Class is two hundred and forty three (243) members. *See* Kovach Declaration, ¶¶ 6, 11.  The FLSA Class Period is six (6) months and the Pennsylvania Class Period is two (2) years. *See* Stipulation § I, ¶¶ 16 and 32, respectively.

a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'").

## VII.   PLAN OF ALLOCATION

"Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Secs. Litig.*, No. C-90-0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (citation omitted) (observing that a "plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable" citing *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992)). Additionally, a plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc. Secs. Litig.*, 127 F. Supp. 2d 418, 596 (S.D.N.Y. 2001). The Allocation Plan here satisfies these objectives.

Under the Parties' proposal, all Pennsylvania Settlement Class members will automatically receive a fixed monthly amount for each "Compensable Month" they were employed in a Covered Position during the Pennsylvania Class Period unless

they elect to opt out of the Settlement.  The FLSA Settlement Class Members and Pennsylvania Settlement Class Members who have claims subject to the Released Federal Claims and who submitted Claim Forms will receive a fixed monthly amount for each "Compensable Month" they were employed in a Covered Position during the FLSA Class Period. "Compensable Months" means the calendar months a Settlement Class Member was actively employed in a Covered Position for more than seven (7) calendar days within the applicable class period(s). Notwithstanding the foregoing, in no event shall a Class Member's Compensable Months be less than one (1) even if a Settlement Class Member was employed in a Covered Position for less than seven (7) calendar days during the class period.

As has been previously noted, the crux of Plaintiff's claims involves Defendant's failure to pay overtime wages.  Thus, it is reasonable to value the overtime claims of each Settlement Class Member in the respective classes equally.  Because the FLSA is a statute of nationwide scope, all Settlement Class members employed during the FLSA Class Period have a potential claim for overtime pay under the FLSA, and that claim is either equally strong or equally weak for every Settlement Class Member.  Furthermore, Pennsylvania's overtime laws affect each member of the Pennsylvania Settlement Class uniformly. Accordingly, the Parties believe that the fairest solution is to pay all Settlement Class Members in the applicable settlement class the same monthly rate.

For the reasons discussed above, the Parties believe that this allocation plan is reasonable and fair to the Settlement Classes as a whole and respectfully request that the Court approve their Plan of Allocation.

## VIII.  THE PROPOSED NOTICE PLAN

To satisfy due process, notice of the Settlement to members of the Settlement Classes must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The form of notice must be sufficient to accomplish this purpose.  "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as Counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. at 368; *see also Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988).  Here, the form and method of Notice of the proposed Settlement agreed to by the Parties satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1)(B).

The Notice Plan was intended to fully inform Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make

informed decisions about their rights.  The mailed Class Notice provided detailed information about the Settlement, including: 1) a comprehensive summary of its terms; 2) Class Counsel's intent to request attorneys' fees and a reimbursement of costs and expenses; and 3) detailed information about the Released Claims.  In addition, the Class Notice provided information about the Final Fairness Hearing date, Settlement Class Members' rights to object (and deadlines and procedures for doing so), and the procedure to receive additional information.  The Notice also provided potential Settlement Class Members with contact information for the Claims Administrator and the Parties' respective counsel.  *See* the Class Notices, attached as Exhibits 1 and 2 to the Kovach Declaration.

Accordingly, the Class Notice mailed to Settlement Class Members satisfies the due process requirements of FED. R. CIV. P. 23.

## IX.   CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court enter the [Proposed] Judgment and Order of Dismissal approving the proposed Settlement.

Dated: January 14, 2011                    Respectfully submitted,

*/s/ Peter A. Muhic*                       */s/ Michael J. Ossip [with consent]*
Peter A. Muhic, Esquire                    Michael J. Ossip, Esquire
Robert J. Gray, Esquire                    Kelly Basinger Charnley, Esquire
Barroway Topaz Kessler Meltzer             Morgan, Lewis & Bockius LLP
& Check, LLP                               1701 Market Street
280 King of Prussia Road                   Philadelphia, PA 19103

Radnor, PA 19087                              Telephone: (215) 963-5761/5763
Telephone: (610)667-7706

*Attorneys for Plaintiff*                        *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2011, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

<u>*s/ Peter A. Muhic*</u>
Peter A. Muhic
*Attorney for Plaintiff*